FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

6/17/21

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:21-cr-19-MMH-PDB

SAMUEL CHRISTOPHER TEMPLEMAN

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by KARIN

HOPPMANN, Acting United States Attorney for the Middle District of Florida, and

the defendant, SAMUEL CHRISTOPHER TEMPLEMAN, and the attorney for the

defendant, Maurice Grant, Esq., mutually agree as follows:

**A.**   **Particularized Terms**

1.   Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the

Indictment.  Count One charges the defendant with conspiring to traffic a child for

commercial sex, in violation of 18 U.S.C. § 1594(c).

2.   Maximum Penalties

Count One carries a term of imprisonment of up to life, a fine of not

more than $250,000, or both imprisonment and a fine, a term of supervised release of

not less than five years up to life, and a mandatory special assessment of $100, said

special assessment to be due on the date of sentencing.

Defendant's Initials _SCt_                    AF Approval _MT_

Pursuant to 18 U.S.C. § 3583(k), if the defendant is required to register under the Sex Offender Registration and Notification Act and commits any criminal felony offense under Title 18, United States Code, Chapter 109A, 110 or 117, or Sections 1201 or 1591, the Court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years and up to life.  Any other violation of the terms and conditions of supervised release is punishable by a term of imprisonment of up to five years.

In addition, pursuant to 18 U.S.C. § 3014, the Court shall impose a $5,000 special assessment on any non-indigent defendant convicted of an offense in violation of certain enumerated statutes involving: (1) peonage, slavery, and trafficking in persons; (2) sexual abuse; (3) sexual exploitation and other abuse of children; (4) transportation for illegal sexual activity; or (5) human smuggling in violation of the Immigration and Nationality Act (exempting any individual involved in the smuggling of an alien who is the alien's spouse, parent, son or daughter).

The Court shall order the defendant to make restitution to any victim of the offense, as set forth below.

3.  <u>Elements of the Offense(s)</u>

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

<u>First:</u>   That the defendant knowingly conspired with another person to violate Title 18, United States Code, Section 1591(a) and (b)(2), that is, to recruit, entice, harbor, transport, obtain, maintain,

Defendant's Initials _SCT_                2

patronize, and solicit, by any means, the person named in the indictment, in and affecting interstate and foreign commerce, knowing and in reckless disregard of the fact that the person named in the indictment was under the age of 18 years and would be caused to engage in a commercial sex act;

Second:    That the defendant did so knowing the conspiratorial goal; and

Third:    That the defendant voluntarily assisted in accomplishing that goal.

4.    Counts Dismissed

At the time of sentencing, the remaining count against the defendant, Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    Mandatory Restitution to Victims of Offenses of Conviction

Pursuant to 18 U.S.C. §§ 3663(a)(1), 3663A(a), 3663A(b), and 3664, defendant agrees to make full restitution, if any, to the victim identified as Minor Victim 1 in the indictment. Defendant agrees that such restitution shall be made as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to Minor Victim 1 for the entire scope of the defendant's criminal conduct, including but not limited to all matters included as relevant conduct.

6.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward

Defendant's Initials _SCT_                3

adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The

defendant understands that this recommendation or request is not binding on the

Court, and if not accepted by the Court, the defendant will not be allowed to

withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior

to operation of subsection (a) is level 16 or greater, and if the defendant complies

with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement,

including but not limited to, the timely submission of the financial affidavit

referenced in Paragraph B.5., the United States agrees to file a motion pursuant to

USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant

understands that the determination as to whether the defendant has qualified for a

downward adjustment of a third level for acceptance of responsibility rests solely

with the United States Attorney for the Middle District of Florida, and the defendant

agrees that the defendant cannot and will not challenge that determination, whether

by appeal, collateral attack, or otherwise.

   7.   Sex Offender Registration and Notification

The defendant has been advised and understands, that under the Sex

Offender Registration and Notification Act, a federal law, the defendant must

register and keep the registration current in each of the following jurisdictions: the

location of the defendant's residence, the location of the defendant's employment;

and, if the defendant is a student, the location of the defendant's school.  Registration

will require that the defendant provide information that includes name, residence

Defendant's Initials _SG_                   4

address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

8.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 1594(d), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following:

a.   ZTE model Z899VL cellular telephone, serial number 32FB76122680;

b.   iPhone model XR cellular telephone, serial number 356450103439078;

c.   LG model LGK50 cellular telephone, serial number 359962102240361; and

d.   Samsung model SM-A102U cellular telephone, serial number 356274100620948,

Defendant's Initials  _S C T_                         5

which assets were used in the conspiracy to traffic a child for commercial sex as charged in Count One.  The defendant further consents to the filing of a motion by the United States for immediate entry of a Preliminary Order of Forfeiture.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be

Defendant's Initials _SCT_                    6

interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement.  If the United States determines that property of the defendant identified for forfeiture

Defendant's Initials  SLT                    7

cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be

Defendant's Initials _SC\__                          8

binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

**B.**    **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials  _S C̶_                    9

2.   Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office

Defendant's Initials _S̶G̶_            10

within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared

Defendant's Initials _Jef_                    11

by the United States Probation Office.  The defendant understands and

acknowledges that, although the parties are permitted to make recommendations and

present arguments to the Court, the sentence will be determined solely by the Court,

with the assistance of the United States Probation Office.  Defendant further

understands and acknowledges that any discussions between defendant or

defendant's attorney and the attorney or other agents for the government regarding

any recommendations by the government are not binding on the Court and that,

should any recommendations be rejected, defendant will not be permitted to

withdraw defendant's plea pursuant to this plea agreement.  The government

expressly reserves the right to support and defend any decision that the Court may

make with regard to the defendant's sentence, whether or not such decision is

consistent with the government's recommendations contained herein.

7.     Defendant's Waiver of Right to Appeal the Sentence

        The defendant agrees that this Court has jurisdiction and authority to

impose any sentence up to the statutory maximum and expressly waives the right to

appeal defendant's sentence on any ground, including the ground that the Court

erred in determining the applicable guidelines range pursuant to the United States

Sentencing Guidelines, except (a) the ground that the sentence exceeds the

defendant's applicable guidelines range as determined by the Court pursuant to the

United States Sentencing Guidelines; (b) the ground that the sentence exceeds the

statutory maximum penalty; or (c) the ground that the sentence violates the Eighth

Amendment to the Constitution; provided, however, that if the government exercises

Defendant's Initials  _SCT_                    12

its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then

the defendant is released from his waiver and may appeal the sentence as authorized

by 18 U.S.C. § 3742(a).

8.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the

United States Attorney for the Middle District of Florida and cannot bind other

federal, state, or local prosecuting authorities, although this office will bring

defendant's cooperation, if any, to the attention of other prosecuting officers or

others, if requested.

9.     Filing of Agreement

This agreement shall be presented to the Court, in open court or in

camera, in whole or in part, upon a showing of good cause, and filed in this cause, at

the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon any

discussions between the attorney for the government and the defendant and

defendant's attorney and without promise of benefit of any kind (other than the

concessions contained herein), and without threats, force, intimidation, or coercion

of any kind.  The defendant further acknowledges defendant's understanding of the

nature of the offense or offenses to which defendant is pleading guilty and the

elements thereof, including the penalties provided by law, and defendant's complete

Defendant's Initials _Scf_                    13

satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _SCJ_              14

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _15th_ day of _June_ 2021.


KARIN HOPPMANN
Acting United States Attorney


SAMUEL CHRISTOPHER TEMPLEMAN        LAURA COFER TAYLOR
Defendant                           Assistant United States Attorney


MAURICE GRANT                       KELLY KARASE
Attorney for Defendant              Assistant United States Attorney
                                    Deputy Chief, Jacksonville Division


Defendant's Initials _SCT_                    15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                     CASE NO. 3:21-cr-19-MMH-PDB

SAMUEL CHRISTOPHER TEMPLEMAN

### PERSONALIZATION OF ELEMENTS

**As to Count One:**

1.      Beginning at least by some date in or around November 2019, and continuing through on or about December 11, 2019, did you knowingly conspire with another person, namely, Deborah Lynn Templeman, to violate Title 18, United States Code, Section 1591(a) and (b)(2)?

   a.      Specifically, did you agree with Deborah Lynn Templeman to recruit, entice, harbor, transport, obtain, maintain, patronize, and solicit, by any means, Minor Victim 1, the person referenced in Count One of the Indictment?

   b.      Did you do so knowing that Minor Victim 1 had not attained the age of 18 years and would be caused to engage in a commercial sex act?

   c.      Were your acts in or affecting interstate or foreign commerce, including through the use of the website www.skipthegames.com, which is based in Europe, and through the use of a Samsung Model SM-A102U cellular telephone, a facility of interstate commerce, which had been manufactured in Vietnam?

2.      Did you do so knowing the conspiratorial goal?

3.      Did you voluntarily assist in accomplishing that goal?

Defendant's Initials _SCT_                16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

    v.                              CASE NO. 3:21-cr-19-MMH-PDB

SAMUEL CHRISTOPHER TEMPLEMAN

## FACTUAL BASIS

At all pertinent times, Samuel Christopher TEMPLEMAN

("S. TEMPLEMAN") and Deborah Lynn TEMPLEMAN ("D. TEMPLEMAN")

knew that Minor Victim 1 was a child with a date of birth in February 2003.

S. TEMPLEMAN and D. TEMPLEMAN had custodial rights over Minor Victim 1

from the time of her birth until July 2019, when those custodial rights were

terminated.  Unless otherwise specified, the events described herein occurred in

Duval County, Florida, and St. Johns County, Florida, both within the Middle

District of Florida.

Beginning around early 2017, Minor Victim 1 began experimenting with hard

drugs.  Around August 2018, Minor Victim 1 began using heroin.  At that time,

S. TEMPLEMAN had a long-term addiction to opioid pills.  At some point after

Minor Victim 1 began using heroin, Minor Victim 1 observed that S. TEMPLEMAN

was "dope sick," meaning that he was suffering from withdrawal effects of opioid

drugs.  Minor Victim 1 offered heroin to S. TEMPLEMAN, which he accepted.

Thereafter, Minor Victim 1 and S. TEMPLEMAN began using heroin and cocaine

Defendant's Initials __*Sct*__          17

base together on a routine basis.  During this time, Minor Victim 1 also began

engaging in commercial sex "dates" at the direction of a pimp in exchange for drugs.

In July 2019, S. TEMPLEMAN and D. TEMPLEMAN's custodial rights to

Minor Victim 1 were terminated, and Minor Victim 1 was placed into a foster care

placement in Daytona, Volusia County, Florida, within the Middle District of

Florida.  By court order, S. TEMPLEMAN and D. TEMPLEMAN were not

permitted contact with Minor Victim 1.  Minor Victim 1 shortly thereafter absconded

from the foster care placement and engaged in commercial sex in exchange for a ride

back to Jacksonville.

Around late August 2019, D. TEMPLEMAN informed Minor Victim 1 that

S. TEMPLEMAN had received a sum of money as a result of an inheritance.  The

amount that S. TEMPLEMAN received was approximately $26,000.  Minor

Victim 1 agreed to meet up with S. TEMPLEMAN and D. TEMPLEMAN, and the

three stayed in a Jacksonville-area hotel for several days.  On September 14, 2019,

S. TEMPLEMAN and D. TEMPLEMAN used $5000 of the inheritance money to

make a down payment on a 2011 Honda Accord.  Around the middle of September

2019, Minor Victim 1 again made contact with S. TEMPLEMAN and D.

TEMPLEMAN and asked to stay with them; S. TEMPLEMAN and D.

TEMPLEMAN agreed.

Until approximately sometime in the middle of October 2019, S.

TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 used the inheritance

money for expenses including cellular telephones, hotels, food, clothing, and drugs,

Defendant's Initials _____                    18

with approximately half of the inheritance money being used to purchase drugs for S. TEMPLEMAN and Minor Victim 1.

During this time, D. TEMPLEMAN maintained regular employment with Allstate Insurance, where she was paid approximately $1000 every two weeks. S. TEMPLEMAN had no independent source of income.  After spending all of the inheritance money, the only legitimate source of income for S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 was D. TEMPLEMAN's bi-weekly salary. D. TEMPLEMAN would cash her paychecks and provide a portion of the money to S. TEMPLEMAN and Minor Victim 1, while D. TEMPLEMAN would use the remainder to pay bills.  The money from D. TEMPLEMAN's paychecks would be depleted within 1-2 days of receipt, with S. TEMPLEMAN and Minor Victim 1 spending their portion primarily on drugs.  During the remaining 12-13 days of every two-week period, the only income for S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 was derived from Minor Victim 1 engaging in commercial sex acts and occasional panhandling for gas money.

Until December 11, 2019, S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 would occasionally rent hotel rooms, sometimes stay at truck stops, sometimes sleep in the 2011 Honda Accord, and sometimes sleep at Allstate Insurance (D. TEMPLEMAN's place of employment).  During weekdays when D. TEMPLEMAN was working, S. TEMPLEMAN and Minor Victim 1 would drop D. TEMPLEMAN off at work and then S. TEMPLEMAN would drive Minor Victim 1 to various commercial sex "dates."  The majority of the money Minor

Defendant's Initials _SCT_                    19

Victim 1 made by engaging in commercial sex "dates" was spent on drugs for

S. TEMPLEMAN and Minor Victim 1, with some also spent on necessities such as

food and hotel rooms for S. TEMPLEMAN, D. TEMPLEMAN, and Minor

Victim 1.  During times that D. TEMPLEMAN was not working, she would also

accompany S. TEMPLEMAN and Minor Victim 1 to Minor Victim 1's commercial

sex dates and at times drove Minor Victim 1 to commercial sex dates.

On December 11, 2019, detectives with the Jacksonville Sheriff's Office

traveled to D. TEMPLEMAN's place of employment (Allstate Insurance) in order to

attempt to recover Minor Victim 1.  Detective Jessica Maynard was advised by

D. TEMPLEMAN's coworkers that D. TEMPLEMAN was on a break with

S. TEMPLEMAN and Minor Victim 1.  Detective Maynard waited inside of Allstate

Insurance for D. TEMPLEMAN to return.  Upon returning, D. TEMPLEMAN

advised Detective Maynard that S. TEMPLEMAN had dropped her off on a side

street and she had walked the rest of the way back to Allstate because

S. TEMPLEMAN and D. TEMPLEMAN did not want law enforcement to know

that they had custody of Minor Victim 1.  D. TEMPLEMAN expressed that she

wanted Minor Victim 1 to get help, and that S. TEMPLEMAN and Minor Victim 1

would be returning to pick her up at Allstate at the end of the work day.  Detective

Maynard remained at Allstate throughout the rest of D. TEMPLEMAN's work day,

which was supposed to end at 5pm.  During the day, D. TEMPLEMAN related to

Detective Maynard that she was aware that S. TEMPLEMAN and Minor Victim 1

were addicted to drugs and that she would sometimes ride with them to buy drugs.

Defendant's Initials _*sag*_                    20

D. TEMPLEMAN admitted to Detective Maynard that she knew Minor Victim 1 was engaging in prostitution and that she had taken Minor Victim 1 to "dates" both on her own and with S. TEMPLEMAN.

On December 11, 2019, while Detective Maynard was at D. TEMPLEMAN's office, S. TEMPLEMAN called D. TEMPLEMAN on the phone and the call was conducted via speakerphone such that Detective Maynard could hear their conversation.  During the phone call, S. TEMPLEMAN inquired whether D. TEMPLEMAN had obtained money from a loan that they had applied for during lunch.  After the phone call, D. TEMPLEMAN stated to Detective Maynard that she was the only one who worked and that her money was gone, mostly having been spent on drugs for S. TEMPLEMAN and Minor Victim 1.  D. TEMPLEMAN advised that the family has used the money Minor Victim 1 would make engaging in commercial sex to buy food, pay for hotels, pay bills, and other necessities.

On December 11, 2019, just prior to 5pm, S. TEMPLEMAN again called D. TEMPLEMAN at her office, and Detective Maynard was able to overhear their conversation.  S. TEMPLEMAN stated to D. TEMPLEMAN that he was going to take Minor Victim 1 to a "date" to get money before they came to pick up D. TEMPLEMAN.  At approximately 7pm, S. TEMPLEMAN and Minor Victim 1 arrived at Allstate to pick up D. TEMPLEMAN; Minor Victim 1 was recovered, and S. TEMPLEMAN was arrested.

After being arrested, on December 11, 2019, S. TEMPLEMAN was advised of his Miranda rights and, having been advised, agreed to be interviewed.

S. TEMPLEMAN stated that he was aware that Minor Victim 1 engaged in commercial sex acts and had "started coming around" after finding out about his receipt of the inheritance money.  S. TEMPLEMAN explained that he knew that Minor Victim 1 was associating with a bad crowd and using drugs, and that if she were going to do that, S. TEMPLEMAN would rather Minor Victim 1 did it with him.  S. TEMPLEMAN acknowledged having taken Minor Victim 1 to a commercial sex date earlier that day and stated "I just kind of leave it in the Lord's hand" and that he hoped Minor Victim 1 knows what she's doing because "there's . . . a chance that she could not come back to my car."  S. TEMPLEMAN stated that Minor Victim 1 posted her own advertisements for commercial sex "dates," and that both he and D. TEMPLEMAN would take her to them.  S. TEMPLEMAN admitted that he, D. TEMPLEMAN, and Minor Victim 1 all lived off of the proceeds of Minor Victim 1's commercial sex "dates."  S. TEMPLEMAN stated that Minor Victim 1 would engage in car dates and that he would screen the customers, also referred to as "johns," to make sure they were safe.  S. TEMPLEMAN estimated having taken Minor Victim 1 to 20-30 commercial sex dates in total.  S. TEMPLEMAN stated that he would make sure that Minor Victim 1 always used condoms and that sometimes D. TEMPLEMAN would buy the condoms for Minor Victim 1.  S. TEMPLEMAN stated that he knew QV referred to a "quick visit" which means "she wants it quick," that Minor Victim 1 "doesn't do anal at all," but would engage in vaginal sex and "probably" oral sex.  S. TEMPLEMAN described

the nicknames, ages, vehicles, and locations where Minor Victim 1 would meet some of her "regular" johns.

Multiple phones belonging to S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 were reviewed, which revealed that each phone contained text message communications setting up commercial sex dates with johns. Additionally, Detective Maynard located multiple advertisements on www.skipthegames.com, which is a website based in Europe that is commonly used for arranging commercial sex dates, featuring advertisements of Minor Victim 1 for commercial sex. The www.skipthegames.com ads featured the phone numbers of the cellular telephones belonging to S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1, which had previously been purchased using inheritance money. One of the phones, which belonged to D. TEMPLEMAN, also contained multiple still images and a video constituting child sex abuse material depicting Minor Victim 1 engaging in masturbation and lascivious exhibition of her genital area. Minor Victim 1 had taken these images and video in order to send them to potential johns upon request. This cellular telephone was a Samsung Model SM-A102U cellular telephone, which is a facility of interstate commerce. A review of the Samsung Model SM-A102U cellular telephone revealed that it had been manufactured in Vietnam. D. TEMPLEMAN admitted to Detective Maynard that she was aware that child sex abuse material was contained on the Samsung Model SM-A102U cellular telephone and during a jail phone call after her arrest referenced having seen the child sex abuse material that was stored on her phone.

Defendant's Initials _SCT_                23